IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ABSOLUTE ENERGY SOLUTIONS, LLC, § § | | |
| Plaintiff, § | | |
| v. § | CIVIL ACTION NO. H-13-3358 | |
| JASON TROSCLAIR, *et al.*, § | | |
| Defendants. § | | |
| ------------------------------------------------ | | |
| JASON TROSCLAIR, § | | |
| Counter-Claimant, § | | |
| v. § | | |
| ABSOLUTE ENERGY SOLUTIONS, § | | |
| LLC, *et al.*, § | | |
| Counter-Defendants. § | | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The issue before the Court is whether Defendant/Counter-Claimant Jason Trosclair's ("Trosclair") remaining counterclaims against Counter-Defendants Absolute Energy Solutions, LLC ("Absolute"), Farlyn Bowen ("Bowen"), and Todd Hubble ("Hubble") (collectively, "Counter-Defendants") are barred by res judicata. On December 3, 2014, the Court entered a Memorandum and Order granting in part and denying in part Counter-Defendants' Motion for Summary Judgment [Doc. # 42], dismissing Counter-Defendant Kent Hubbard ("Hubbard") from this lawsuit, and dismissing all of Trosclair's counterclaims except his counterclaims for fraud and unjust enrichment against Absolute, Bowen, and Hubble. *See* Memorandum and Order

[Doc. # 50], at 37-38. The Court concluded that the record was insufficient to decide as a matter of law whether Trosclair's remaining counterclaims were barred by res judicata. *See id.*, at 14-19. On February 6, 2015, Trosclair filed an agreed motion stipulating that all parties agreed to waive their right to a jury trial in this case on the res judicata issue and to have the Court hold a bench trial to decide this issue. *See* "Agreed Motion for Bench Trial On [the] Issue of *Res Judicata*" [Doc. # 53], ¶ 8.

The res judicata issue was tried to the Court on February 26, 2015. *See* Hearing Minutes and Order [Doc. # 60]. Having considered the evidence introduced by the parties, all matters of record in this case, the arguments of counsel, and the applicable legal authorities, the Court makes the following findings of fact and conclusions of law.[1] In summary, the Court holds that Trosclair's remaining counterclaims against Absolute, Bowen, and Hubble are barred by res judicata.[2]

## I. FINDINGS OF FACT

Absolute is a limited liability company incorporated in Louisiana with its

---

[1] The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law. To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

[2] The Court's analysis also governs Trosclairs counterclaims against Hubbard as well, and serves as an alternative ground for dismissal of those claims.

principal place of business in Texas.[3]  Bowen and Hubbard were the two founding members of Absolute in 2010.[4]  Hubble became a member and an owner of Absolute in August 2011.[5]  Bowen, Hubble, and Hubbard have been members and owners of Absolute since August 2011, and were the only three members and owners of Absolute during that time period.

Trosclair worked for Absolute from early 2012 to April 2013.  During that time period, Trosclair had several conversations with Bowen and Hubble about becoming an owner of Absolute in exchange for starting a "thru-tubing division."  In April 2012, Trosclair loaned Absolute $200,000 to start the thru-tubing division.  Trosclair made it clear that the $200,000 was a loan, not a capital contribution.  Trosclair and Hubble (signing on behalf of Absolute) executed a promissory note (the "Note") agreeing to repayment of the loan plus interest.[6]

In July 2012, Bowen emailed Trosclair a copy of a letter purporting to offer

---

[3]  Articles of Organization [Doc. # 43-2]; Plaintiff's Original Complaint ("Complaint") [Doc. # 1].

[4]  *See* Minutes of a Special Meeting of the Members of Absolute Energy Solutions, LLC dated August 10, 2010 [Doc. # 43-3]; The Operating Agreement of Absolute Energy Solutions, L.L.C. ("Operating Agreement") [Doc. # 42-5], at 2.

[5]  Amendment to the Operating Agreement of Absolute Energy Solutions, LLC For the Purpose of a Transfer of Membership Interest [43-4].

[6]  Plaintiff's Exhibit 6 ("Unsecured Promissory Note") [Doc. # 62-6], at ECF page 7.

Trosclair an ownership interest in Absolute.[7] Trosclair responded to Bowen stating "I accept the terms."[8] Despite this email exchange, in fact, Trosclair never became an owner or a member of Absolute.[9] Section 3.5 of Absolute's Operating Agreement requires the unanimous consent of all members to add a new member.[10] Section 3.1 of Absolute's Operating Agreement requires a formal amendment to the Operating Agreement to change the ownership ratios of each member.[11] Bowen, Hubble, and Hubbard never provided unanimous consent to add Trosclair as a member of Absolute and never formally amended the Operating Agreement to give Trosclair an ownership interest.

Trosclair was aware that corporate formalities were required before he could become an owner or member of Absolute. On several occasions in the Fall of 2012, Bowen and Hubble met with Trosclair and told him that certain corporate formalities were required before Trosclair could become a member of Absolute. In November 2012, Trosclair emailed Hubble asking when they were going to "redo the company

---

[7] Trosclair's Exhibit 3 ("Offer Letter from Bowen") [Doc. # 62-3].

[8] Email from Trosclair to Bowen and Amanda Perez dated July 6, 2012 [Doc. # 43-7], at ECF page 10.

[9] *See* Court's Memorandum and Order dated Dec. 3, 2014 [Doc. # 50], at 20-27.

[10] Operating Agreement, at 3.

[11] *Id.*, at 2.

paperwork and operating agreement."[12] In December 2012, Hubble emailed Trosclair copies of Absolute's corporate documents, including a copy of the Operating Agreement.[13] Trosclair testified that he forwarded these documents to his attorney without reading them.[14]

In early 2013, Hubbard learned for the first time that Trosclair believed he was an owner or a member of Absolute. Hubbard conferred with Bowen around this time and confirmed that no one had given up any of their ownership interests, and that there was no unanimous consent between Absolute's members to add Trosclair as a member. Hubbard told Trosclair in early 2013 that the "numbers don't add up," meaning Trosclair could not be an owner of Absolute without another member giving up some of his ownership interest.

In April 2013, Trosclair's employment with Absolute ended. After his employment termination, Trosclair did not have any meaningful contact or conversations with Bowen, Hubble, or Hubbard, and did not discuss further with the three of them his belief that he was an owner of Absolute.

---

[12] Counter-Defendants' Exhibit 6 (Email Exchange between Trosclair and Hubble dated Nov. 8 and 9, 2012) [Doc. # 61-6].

[13] Email from Hubble to Trosclair dated Dec. 11, 2012 [Doc. # 43-12].

[14] Trosclair also testified that he had owned businesses previously and knew about corporate formalities.

Shortly after his employment ended, Trosclair retained an attorney. On May 6, 2013, Trosclair's attorney sent Absolute a letter demanding a list of documents to allow Trosclair to "value his interest" in Absolute.[15] The letter further stated that Trosclair's attorney would recommend that Trosclair "pursue all legal remedies to protect his ownership interest in Absolute" if Absolute and its members did not send the requested information by May 20, 2013.[16] Apparently no one from Absolute responded to this letter.

On May 29, 2013, Trosclair sued Absolute in the 295th Judicial District Court of Harris County, Texas, to collect the $200,000 Note plus interest Absolute owed him for his loan to start the thru-tubing division.[17] Bowen, Hubble, and Hubbard decided to hire counsel to represent Absolute. The state court lawsuit was settled within two months,[18] after Bowen, Hubble, and Hubbard agreed that Absolute would pay $203,327.77, the amount owed on the Note.[19] While a formal settlement agreement was not signed, Section 5.4 of Absolute's Operating Agreement requires approval by

---

[15] Counter-Defendants' Exhibit 2 ("Demand Letter") [Doc. # 61-2], at ECF page 1.

[16] *Id.*, at ECF pages 1-2.

[17] Trosclair's Exhibit 6 (Plaintiff Jason Trosclair's Original Petition) [Doc. # 62-6].

[18] Plaintiff's Nonsuit Against Defendant [Doc. # 40-2] (dismissing the first state court case with prejudice on July 12, 2013).

[19] *See* Trosclair's Exhibit 4 ("Cashier's Check") [Doc. # 62-4].

a majority of the members in order to enter into any commitment to pay a third party more than $200,000. Bowen, Hubble, and Hubbard each testified that Absolute's payment to Trosclair of the settlement amount was a unanimous decision.

On August 5, 2013, less than a month after the first state case was dismissed, Trosclair sued Absolute, Bowen, Hubble, and Hubbard in the 189th Judicial District Court of Harris County, Texas, for a declaratory judgment to determine his ownership interest in Absolute.[20] He also asserted claims for breach of fiduciary duty, minority member oppression, a request for accounting, and breach of contract.

On November 14, 2013, Absolute filed the instant lawsuit in federal court against Trosclair and his wife, Rhonda Trosclair, alleging trade secret misappropriation and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.[21] On March 21, 2014, Trosclair voluntarily dismissed the second state court case without prejudice.[22] That same day, Trosclair filed his counterclaims in this federal case against Absolute, Bowen, Hubble, and Hubbard, for a declaratory judgment to determine his ownership interest in Absolute, an accounting from Absolute, breach of

---

[20] *See Trosclair v. Absolute Energy Solutions LLC*, No. 2013-45284, (189th Dist. Ct., Harris Cnty., Tex.). The Court has already taken judicial notice of this second state court case. *See* Memorandum and Order dated Dec. 3, 2014 [Doc. # 50], at 11 n.5.

[21] Plaintiff's Original Complaint [Doc. # 1].

[22] Plaintiff's Nonsuit Against Defendants [Doc. # 43-13].

fiduciary duty, minority member oppression, breach of contract, civil conspiracy, joint and several liability, fraud, fraudulent inducement, and unjust enrichment.[23] After the Court ruled on Counter-Defendants' summary judgment motion, Trosclair's remaining counterclaims are fraud and unjust enrichment against Bowen, Hubble, and Absolute.[24]

## II.     CONCLUSIONS OF LAW

Counter-Defendants assert res judicata as an affirmative defense to all of Trosclair's counterclaims. Counter-Defendants base their defense on Trosclair's first state case for enforcement of his $200,000 Note with Absolute. Because Counter-Defendants ask the Court to give res judicata effect to a Texas state court judgment, the Court looks to Texas res judicata principles to determine if the counterclaims in this case federal case are barred. *See Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 385 n.7 (5th Cir. 2007). Under Texas law, to prevail on the affirmative defense of res judicata, Counter-Defendants must prove "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and

---

[23]     Jason Trosclair's Original Counterclaim [Doc. # 19]. On April 28, 2014, Trosclair filed a First Amended Counterclaim ("Amended Counterclaim") [Doc. # 24] asserting the same causes of action. The Amended Counterclaim is the operative pleading.

[24]     *See* Memorandum and Order dated Dec. 3, 2014 [Doc. # 50], at 37-38. The Court dismissed all of Trosclair's counterclaims against Hubbard but will include him in the res judicata analysis as an alternative holding.

(3) a second action based on the same claims that were raised or could have been raised in the first action." *Thompsom v. Weaver*, 429 S.W.3d 897, 902 (Tex. App.–Tyler 2014, no pet. h.) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

The first element of res judicata is not in dispute. The Court has already determined, and the parties agree, that the dismissal with prejudice of the first state court lawsuit, pursuant to the parties' settlement, constitutes a prior final judgment on the merits by a court of competent jurisdiction. *See* Memorandum and Order dated December 3, 2014 [Doc. # 50], at 15.[25] The Court analyzes the evidence and the parties' arguments on the remaining two res judicata elements.

### A. Privity Between Absolute and Absolute's Members

For the second element, privity among Absolute (the sole defendant in the first state case) and Bowen, Hubble, and Hubbard (the additional Counter-Defendants in this suit),[26] the Texas Supreme Court has recognized that "[t]here is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined." *Getty Oil Co. v. Ins. Co. of N. Am.*,

---

[25] It is also undisputed that the second state court case, which alleged virtually the same claims as Trosclair's counterclaims, cannot be given res judicata effect because it was dismissed without prejudice before a final decision on the merits.

[26] Privity is not in dispute for Absolute.

845 S.W.2d 794, 800 (Tex. 1992); *accord Hill v. Tx-An Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 424-25 (Tex. App.–Dallas 2014, no pet.). Texas courts have consistently held that parties can be in privity in at least three ways: "(1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt*, 919 S.W.2d at 653; *accord Getty Oil Co.*, 845 S.W.2d at 800; *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234-35 (Tex. App.–Houston [1st Dist.] 2014, no pet.); *Hill*, 443 S.W.3d at 425.

Counter-Defendants argue that Bowen, Hubble, and Hubbard were in privity with Absolute because the members of Absolute (Bowen, Hubble, and Hubbard) controlled the first state case. Bowen, Hubble, and Hubbard testified that they decided together in the first state case to hire an attorney to represent Absolute and all agreed Absolute would pay Trosclair the full amount owed on the promissory note to settle the lawsuit.

Trosclair does not dispute that Bowen, Hubble, and Hubbard were involved in this manner in the first state case. Rather, Trosclair argues that privity requires Counter-Defendants to provide "evidence that not only did Bowen and Hubble have the right to control and direct the proceedings in the Loan Lawsuit [the first state case] but also that their participation in those proceedings was active and open in such a way

that would put Trosclair on notice that they had such rights."[27] The cases cited by Trosclair emphasize that privity requires a non party's active and open participation, but these authorities do not, as Trosclair suggests, create a requirement of actual notice to the adverse party of the non-party's involvement. *See McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 389 (Tex. App.–Houston [14th Dist.] 2013, no pet.) ("In determining whether privity exists through control over a prior action, Texas courts have focused on whether an individual actively and openly participated in the prior proceedings to such an extent that it was clear that the individual had the right to direct them." (internal quotation marks and citation omitted)); *Am. Indem. Co. v. Fellbaum*, 263 S.W. 908, 910 (Tex. 1924) ("The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered, as, for example, those who employ counsel in the case, assume the active management of the proceeding or defense, or who pay the costs and do such other things as are generally done by parties." (internal quotation marks and citation omitted)). Although "mere participation" or "knowledge of" a case may not be enough to create privity, privity exists if the non-party clearly had the "right to direct" the parties to the case. *McNeil Interests, Inc.*, 407 S.W.3d at 389 (citing *Brown v.*

---

[27] Counter-Plaintiff's Memorandum of Law [Doc. # 58-8], at 1.

*Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.–Dallas 2005, no pet.); *Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 316 (Tex. App.–Austin 1999 pet. dism'd by agr.)). These Texas cases support the conclusion that privity existed among Absolute and Bowen, Hubble, and Hubbard in connection with the first state case.

While the first state case lasted only a brief time, Bowen, Hubble, and Hubbard were as actively involved as possible. They made all the key decisions; they unanimously decided to hire an attorney to represent Absolute and authorized Absolute to pay Trosclair to settle. The Texas Supreme Court specifically has recognized that hiring an attorney and paying litigation costs can establish a non-party's active involvement. *See Am. Indem. Co.*, 114 Tex. at 910; *see also McNeil*, 407 S.W.3d at 389 (finding that the corporate representative was not in privity with his corporation because he did *not* take actions such as hiring an attorney). Moreover, in a closely held company like Absolute, members Bowen, Hubble, and Hubbard were necessarily the ones with the right to direct the company as to litigation. Indeed, Absolute's Operating Agreement explicitly required the decision to settle the first state case for more than $200,000 to be made by a majority of the members.

Finally, even if the Texas cases Trosclair cites created a requirement for privity that the adverse party must have actual notice of the non-party's involvement in the first suit, which those cases do not, Trosclair was an Absolute employee, worked there

interacting to various degrees with Bowen, Hubble, and Hubbard for over a year, and saw that Absolute's members, especially Bowen and Hubble, were actively engaged in decision-making regarding the company's affairs. Indeed, Troclair knew that Hubble, on Absolute's behalf, signed the promissory note, giving rise to Trosclair's first state case, and Bowen, allegedly as a representative of Absolute, sent Trosclair the "Offer Letter" that Trosclair claimed created his ownership interest. Trosclair had notice from his prior work experience at Absolute that Absolute's members would be involved in the first state case.

The Court concludes that Counter-Defendants have met their burden on the second element of the test for claim preclusion under res judicata and have shown that Bowen, Hubble, and Hubbard, if he were still a Counter-Defendant in this case, were in privity with Absolute during the first state case.

### B.     Counterclaims Could Have Been Raised in the First State Case

To determine the third res judicata element, whether the counterclaims in this case are based on the same claims that were raised or could have been raised in the first state court case, the Court applies Texas's "transactional approach," which requires that "claims arising out of the same subject matter to be litigated in a single lawsuit." *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2007) (citing *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992)).

In Texas, "[d]etermining the scope of the 'subject matter' or 'transaction' of the prior suit requires 'an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action.'" *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) (quoting *Barr*, 837 S.W.2d at 630). The Texas Supreme Court has instructed courts to consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* (quotation marks and citation omitted). "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Barr*, 837 S.W.2d at 630; *accord Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 686 (S.D. Tex. 2014).

Trosclair argues that his counterclaims were not ripe at the time of the first state case. However, Trosclair admits that practically nothing changed after he left Absolute in April 2013. He had no further communication with Bowen, Hubble, and Hubbard. No events transpired that led him to believe for the first time, after the first state case was filed, that a dispute had arisen about his ownership claims. Trosclair's ownership in Absolute was as contested at the time he filed his first state case as when he filed the second state court case in August 2013, and when he filed the same claims from the second state court case as counterclaims in this case in March 2014. Trosclair

undoubtedly preferred in May 2013 to treat the $200,000 loan, the basis of the first state case, as a separate transaction in order to assert a simple claim on which he could quickly recover his money. But the loan clearly was part of the same series of operative facts on which he relies to establish his ownership. Trosclair's counterclaims are based on his allegations that Bowen and Hubble represented to him that he would become an owner or a member of Absolute in exchange for starting up the thru-tubing division. Trosclair claims he lent Absolute $200,000 so it would have capital to start the new thru-tubing division. The $200,000 loan, thus, is a significant part of the series of events that Trosclair claims created his ownership interest in Absolute, the foundation of Trosclair's counterclaims. The Court, therefore, concludes that Trosclair's counterclaims could have been raised in the first state court case. The third and final element of res judicata is satisfied. Trosclair's counterclaims are barred.

### III.   CONCLUSION AND ORDER

For the reasons set forth above, Trosclair's counterclaims against Absolute, Bowen, and Hubble, and against Hubbard, if he were still a Counter-Defendant in this action, are foreclosed by res judicata. Accordingly, it is hereby

**ORDERED** that the counterclaims asserted by Trosclair for fraud and unjust enrichment against Absolute, Bowen, Hubble, and Hubbard are **dismissed with prejudice**.

A separate final judgment on Trosclair's counterclaims will issue.

SIGNED at Houston, Texas, this  26th  day of **March, 2015**.

_____
Nancy F. Atlas
United States District Judge